IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-51

 No. 243A20

 Filed 23 April 2021

 IN THE MATTER OF: M.L.B.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 18

 March 2020 by Judge William J. Moore in District Court, Robeson County. This

 matter was calendared for argument in the Supreme Court on 19 March 2021 but

 determined on the record and briefs without oral argument pursuant to Rule 30(f) of

 the North Carolina Rules of Appellate Procedure.

 J. Edward Yeager Jr. for petitioner-appellee Robeson County Department of
 Social Services.

 Matthew D. Wunsche for appellee Guardian ad Litem.

 Wendy C. Sotolongo, Parent Defender, by Jacky Brammer, Assistant Parent
 Defender, for respondent-appellant father.

 Robert W. Ewing for respondent-appellant mother.

 BARRINGER, Justice.

¶1 Respondents appeal from the trial court’s order terminating their parental

 rights to M.L.B. (Mary).1 After careful review, we reverse the termination-of-

 1 The pseudonym “Mary” is used throughout this opinion to protect the identity of the

 juvenile and for ease of reading.
 IN RE M.L.B.

 2021-NCSC-51

 Opinion of the Court

 parental-rights order and remand to the trial court for further proceedings not

 inconsistent with this opinion.

 I. Background

¶2 The involvement of Robeson County Department of Social Services (DSS) with

 respondents and Mary commenced in February 2014. DSS had received information

 concerning respondents’ substance abuse and ongoing domestic violence in

 respondents’ home. As these issues continued, Mary was placed in kinship care in

 May 2014. DSS filed a petition alleging that Mary was a neglected juvenile on

 10 December 2014. An order granting nonsecure custody to DSS was entered on

 10 December 2014. On 28 April 2015, the trial court entered an order adjudicating

 Mary a neglected juvenile.

¶3 In April 2019, the trial court changed the permanent plan to adoption with a

 concurrent plan of guardianship. DSS filed a termination-of-parental-rights petition

 on 28 May 2019. DSS alleged that grounds existed to terminate respondents’ parental

 rights pursuant to neglect, failure to make reasonable progress in correcting the

 conditions which led to removal, failure to pay a reasonable portion of the cost of care,

 and dependency. See N.C.G.S. § 7B-1111(a)(1)–(3), (6) (2019). DSS alleged as an

 additional ground that the parental rights of respondent-mother with respect to her

 other children had been terminated involuntarily by a court of competent jurisdiction
 IN RE M.L.B.

 2021-NCSC-51

 Opinion of the Court

 and she lacked the ability or willingness to establish a safe home. See N.C.G.S. § 7B-

 1111(a)(9).

¶4 The trial court held the termination-of-parental-rights hearing on

 12 February 2020. At the hearing on termination of parental rights, the transcript

 reflects that DSS’s counsel called as DSS’s first witness the social worker for Mary’s

 case from January 2019 until April 2019. During the testimony of this social worker,

 the transcript reflects the colloquy between DSS’s counsel, the social worker,

 respondent-mother’s counsel, and the trial court regarding a document entitled

 Termination of Parental Rights Timeline (Timeline):

 [DSS’S COUNSEL]: Have you, along with [another] social
 worker, . . . prepared an exhibit for the [c]ourt today?
 [SOCIAL WORKER]: I did.
 [DSS’S COUNSEL]: Is it true and accurate, to the best of
 your ability?
 [SOCIAL WORKER]: It is.
 [DSS’S COUNSEL]: Does it outline [DSS’s] efforts with
 regard to the minor child [Mary]?
 [SOCIAL WORKER]: It does.
 [DSS’S COUNSEL]: Your Honor, we’d ask the [c]ourt to
 accept this witness as a —
 [RESPONDENT-MOTHER’S COUNSEL]: I’m going to
 object for the record, Your Honor.
 THE COURT: (Inaudible)
 IN RE M.L.B.

 2021-NCSC-51

 Opinion of the Court

¶5 DSS called three additional witnesses, a domestic violence case worker at a

 healthcare facility that worked with respondent-mother from 14 November 2019 to

 5 December 2019, a substance abuse counselor at a healthcare facility that oversaw

 a program respondent-mother commenced on 6 February 2019, and a social worker

 working on Mary’s case since April or May 2019. The transcript does not reflect the

 admission of any evidence by DSS other than the testimony of the aforesaid three

 witnesses during the adjudicatory phase of the termination-of-parental-rights

 hearing.

¶6 On 18 March 2020, the trial court entered an order in which it determined that

 each ground alleged in the 28 May 2019 petition existed to terminate respondents’

 parental rights and concluded it was in Mary’s best interests to do so. Respondents

 appealed.

 II. Timeline

¶7 Both respondent-mother and respondent-father argue that the trial court’s

 reliance on the Timeline referenced during the termination-of-parental-rights

 hearing was an error. The trial court in the termination-of-parental-rights order

 stated in paragraph 40 that “[t]he [c]ourt relies on and accepts into evidence the

 Timeline, in making these findings and finds the said report to [be] both credible and
 IN RE M.L.B.

 2021-NCSC-51

 Opinion of the Court

 reliable.”2 Respondents both contend that the trial court’s pervasive reliance on the

 Timeline is reflected in the findings of fact and conclusions of law in the termination-

 of-parental-rights order, rendering the termination-of-parental-rights order tainted

 and unreviewable. DSS argues that a trial court is presumed to disregard

 incompetent evidence in a bench trial and that there is competent evidence besides

 the Timeline to support the termination-of-parental-rights order.

¶8 DSS has neither argued that the Timeline was admissible evidence nor that

 respondents waived their objection to the Timeline’s admissibility. Therefore, we do

 not address whether the Timeline was inadmissible hearsay. Instead, we presume

 the Timeline was inadmissible and not properly considered by the trial court. Thus,

 we next consider whether other evidence admitted during the termination-of-

 parental-rights hearing provides the bases for the trial court’s findings of fact. “If

 either of the . . . grounds [for termination of parental rights found by the trial court

 are] supported by findings of fact based on clear, cogent and convincing evidence, the

 order appealed from should be affirmed.” In re Moore, 306 N.C. 394, 404 (1982). When

 a judge sits without a jury, this Court presumes that the trial court disregards any

 incompetent evidence and will affirm the judgment or order if the trial court’s

 2 As summarized in the background section of this opinion, the transcript does not

 establish that the Timeline was admitted into evidence during the termination-of-parental-
 rights hearing.
 IN RE M.L.B.

 2021-NCSC-51

 Opinion of the Court

 findings are supported by competent evidence. Munchak Corp. v. Caldwell, 301 N.C.

 689, 694 (1981).

¶9 DSS argues that there was overwhelming, unrebutted evidence to support the

 termination of parental rights, reciting the testimony of the witnesses DSS tendered

 at the termination-of-parental-rights hearing. However, after a thorough review of

 the testimony presented at the termination-of-parental-rights hearing, we cannot

 conclude that the testimony alone provides clear, cogent, and convincing evidence

 supporting the challenged findings of fact of the trial court necessary to support its

 conclusions of law for any ground for termination. See In re Moore, 306 N.C. at 404.

 DSS’s first witness, a social worker, testified that Mary had been in DSS care and

 custody since 11 December 2014. There was also testimony regarding the case plans

 signed by respondents, respondents’ compliance with the case plans, and their

 progress on the conditions that led to Mary’s removal from their home, among other

 things.

¶ 10 Yet, as highlighted by respondents in their briefs, the challenged findings of

 fact include a substantial amount of information that cannot be discerned from the

 testimony presented at the termination-of-parental-rights hearing. This information

 is in the Timeline. For purposes of this appeal, however, the Timeline is inadmissible

 incompetent evidence on which the trial court should not have relied. Therefore, the

 order terminating respondents’ parental rights must be reversed; the testimony at
 IN RE M.L.B.

 2021-NCSC-51

 Opinion of the Court

 the termination-of-parental-rights hearing does not provide clear, cogent, and

 convincing evidence supporting the challenged findings of fact of the trial court

 necessary to support the trial court’s conclusions of law for any ground for

 termination.

 III. Indian Child Welfare Act Proceedings

¶ 11 Respondent-father argues that the trial court failed to comply with the Indian

 Child Welfare Act (ICWA) and asks this Court to vacate and remand for compliance

 with the ICWA. DSS concedes the record is silent as to whether the trial court

 considered the impact of the ICWA on this case and that the matter should be

 remanded to the trial court as a result. The guardian ad litem agrees that the matter

 should be remanded for the trial court to comply with the ICWA. We agree that the

 record does not reflect compliance with the ICWA, and thus we instruct the trial court

 on remand to comply with the ICWA.

¶ 12 In 2016, the United States Department of the Interior promulgated regulations

 to promote the uniform application of the ICWA codified at subpart I of 25 C.F.R.

 pt. 23. Indian Child Welfare Act Proceedings, 25 C.F.R. §§ 23.101–.144 (2019); Indian

 Child Welfare Act Proceedings; Final Rule, 81 Fed. Reg. 38,777, 38,782 (June 14,

 2016) (to be codified at 25 C.F.R. pt. 23); see also In re E.J.B., 375 N.C. 95, 101 (2020).

¶ 13 The provisions under subpart I do not affect proceedings initiated prior to

 12 December 2016, but the provisions “apply to any subsequent proceeding in the
 IN RE M.L.B.

 2021-NCSC-51

 Opinion of the Court

 same matter or subsequent proceedings affecting the custody or placement of the

 same child.” 25 C.F.R. § 23.143. A child custody proceeding includes “any action

 resulting in the termination of the parent-child relationship.” 25 U.S.C. § 1903(1)(ii).

¶ 14 Pursuant to 25 C.F.R. § 23.107(a),

 [s]tate courts must ask each participant in an emergency
 or voluntary or involuntary child-custody proceeding
 whether the participant knows or has reason to know that
 the child is an Indian child. The inquiry is made at the
 commencement of the proceeding and all responses should
 be on the record. State courts must instruct the parties to
 inform the court if they subsequently receive information
 that provides reason to know the child is an Indian child.

 25 C.F.R. § 23.107(a).

¶ 15 As defined in 25 U.S.C. § 1903(4), “ ‘Indian child’ means any unmarried person

 who is under age eighteen and is either (a) a member of an Indian tribe or (b) is

 eligible for membership in an Indian tribe and is the biological child of a member of

 an Indian tribe.” 25 U.S.C. § 1903(4). “ ‘Indian tribe’ means any Indian tribe, band,

 nation, or other organized group or community of Indians recognized as eligible for

 the services provided to Indians by the Secretary because of their status as Indians,

 including any Alaska Native village as defined in section 1602(c) of title 43.” 25 U.S.C.

 § 1903(8); see Indian Entities Recognized by and Eligible to Receive Services from the

 United States Bureau of Indian Affairs, 86 Fed. Reg. 7,554, 7,554 (Jan. 29, 2021).

¶ 16 “The inquiry into whether a child is an ‘Indian child’ under ICWA is focused on

 only two circumstances: (1) Whether the child is a citizen of a Tribe; or (2) whether
 IN RE M.L.B.

 2021-NCSC-51

 Opinion of the Court

 the child’s parent is a citizen of the Tribe and the child is also eligible for citizenship.”

 Indian Child Welfare Act Proceedings; Final Rule, 81 Fed. Reg. at 38,804. The inquiry

 “is not based on the race of the child, but rather indications that the child and her

 parent(s) may have a political affiliation with a Tribe [as defined in 25 U.S.C.

 § 1903].” Indian Child Welfare Act Proceedings; Final Rule, 81 Fed. Reg. at 38,806;

 see also Indian Child Welfare Act Proceedings; Final Rule, 81 Fed. Reg. at 38,801

 (“ ‘Indian child’ is defined based on the child’s political affiliation with a federally

 recognized Indian Tribe.”).

¶ 17 Paragraph (c) of 25 C.F.R. § 23.107 states:

 (c) A court, upon conducting the inquiry required in
 paragraph (a) of this section, has reason to know that a
 child involved in an emergency or child-custody proceeding
 is an Indian child if:
 (1) Any participant in the proceeding, officer of the court
 involved in the proceeding, Indian Tribe, Indian
 organization, or agency informs the court that the child is
 an Indian child;
 (2) Any participant in the proceeding, officer of the court
 involved in the proceeding, Indian Tribe, Indian
 organization, or agency informs the court that it has
 discovered information indicating that the child is an
 Indian child;
 (3) The child who is the subject of the proceeding gives
 the court reason to know he or she is an Indian child;
 (4) The court is informed that the domicile or residence
 of the child, the child’s parent, or the child’s Indian
 custodian is on a reservation or in an Alaska Native village;
 (5) The court is informed that the child is or has been a
 ward of a Tribal court; or
 IN RE M.L.B.

 2021-NCSC-51

 Opinion of the Court

 (6) The court is informed that either parent or the child
 possesses an identification card indicating membership in
 an Indian Tribe.

 25 C.F.R. § 23.107(c).

¶ 18 As the termination-of-parental-rights hearing occurred after 12 December

 2016 and the trial court did not ask the participants on the record whether the

 participants knew or had reason to know that Mary is an Indian child, the trial court

 did not comply with 25 C.F.R. § 23.107(a). Since the trial court did not comply with

 25 C.F.R. § 23.107(a), the trial court could not comply with 25 C.F.R. § 23.107(c) and

 could not determine whether it had reason to know Mary is an Indian child. See 25

 C.F.R. § 23.107(c) (“A court, upon conducting the inquiry required in paragraph (a) of

 this section, has reason to know that a child involved in an emergency or child-custody

 proceeding is an Indian child if . . . .”).

¶ 19 Therefore, on remand, the trial court “must ask each participant in [the

 termination-of-parental-rights proceeding] whether the participant knows or has

 reason to know that the child is an Indian child” on the record and receive the

 participants’ responses on the record. 25 C.F.R. § 23.107(a). The trial court “must

 instruct the parties to inform the court if they subsequently receive information that

 provides reason to know the child is an Indian child.” Id. This should be done

 promptly upon remand before holding a new termination-of-parental-rights hearing.

 If there is reason to know that Mary is an Indian child, the trial court must comply
 IN RE M.L.B.

 2021-NCSC-51

 Opinion of the Court

 with 25 C.F.R. § 23.107(b), and DSS, as the party seeking termination of parental

 rights, must comply with 25 U.S.C. § 1912(a) and 25 C.F.R. § 23.111(d). See In re

 E.J.B., 375 N.C. at 104–05 (discussing notice requirements under 25 U.S.C. § 1912

 and 25 C.F.R. § 23.111(d)).3

 IV. Conclusion

¶ 20 For the reasons set forth in this opinion, we reverse the termination-of-

 parental-rights order and remand this case to the trial court to conduct a new hearing

 on termination of respondents’ parental rights and to comply with the requirements

 of ICWA. Given our disposition of this appeal, we decline to address respondents’

 remaining arguments on appeal.

 REVERSED AND REMANDED.

 3 All participants should become familiar with the Indian Child Welfare Act of 1978,

 codified at 25 U.S.C. ch. 21, and the corresponding regulations, including but not limited to
 the regulations codified at 25 C.F.R. §§ 23.101–.144, to ensure compliance with the ICWA
 and to assert objections on the record if compliance in a proceeding has not occurred.